## HAXBY v. CHICAGO & N. W. RY. CO.

Evidence held insufficient to sustain a verdict finding that defendant's alleged negligence proximately caused the killing of plaintiff's horses.

(Opinion filed, Dec. 1, 1909.)

Appeal from Circuit Court, Pennington County. Hon. LEVI McGEE, Judge.

Action by Thomas B. Haxby against the Chicago & Northwestern Railway Company. Judgment for plaintiff, and defendant appeals. Reversed.

*Buell & Gardner,* for appellant. *Frank D. Bangs,* for respondent.

WHITING, J. This action was brought by the plaintiff to recover from defendant damages which he claims to have suffered from the killing of nine head of horses and colts by trains of defendant company; it being alleged that such killing was the result of negligence on the part of defendant company. Under the view which we take of this case, it will not be necessary to set out in full the pleadings herein; it being sufficient to state that plaintiff alleged the killing of one colt in the spring of 1906, four horses in October, 1906, and that owing to the killing of one of said horses, to wit, a mare, its sucking colt died; and, further, that three horses were killed in December, 1906. The negligence alleged was in relation to the kind of cattle guards placed by the company where its right of way crossed the public highway, and in relation to the condition in which such cattle guards were kept. From the evidence it appears that defendant company has a line of road running north from the city of Rapid City to the town of Black Hawk, and that between said points, near a ranch owned by one Wallin, the public highway, going from the south along the east side of the right of way of defendant company, turned and crossed said right of way, thence running north along the west side of said right of way for a distance not shown by the evidence, then recrossed such right of way, running thence north on the east side of such right of way. It appears further from the evidence that, between these two crossings, and also north and south of them, the railroad company had constructed along the side of the right of way a wire fence, and that at the crossings wing fences were built from the end of the said fences extending up to and near the track, there boards extended down to the edge of the cattle guards, which cattle guards were placed between and immediately outside of the rails to complete the obstruction to stock attempting to enter upon the right of way of the railroad company. It appears that

these cattle guards were constructed by taking strips of wood about eight feet in length, six inches in width, and a little less than an inch in thickness, and placing the same on edge, one strip by the side of another, with a space about an inch and one-half between them, which space at the center and ends was filled by blocks, and these strips fastened together by bolts or rods running through where such blocks were placed. It was the theory of the plaintiff that, owing to the condition of these cattle guards, from their being worn down, and also from their filling up beneath with dirt, horses could, at their leisure, walk over the same, thus getting in upon the right of way of the company, and that stock was in the habit of passing over such cattle guards onto said right of way owing to the fact that the feed on such right of way was more luxuriant than on the range outside; and that when horses thus got in on such right of way, if a train came along, they were liable to get frightened, and in attempting to escape were liable to get caught and killed by the train; and that this was how his stock was killed. Plaintiff's proof failed to establish any claim whatever regarding the killing of the animal in the spring of 1906, and plaintiff also failed in his proof in regard to damages from the death of the suckling colt. Eliminating the value of these two animals, the value of the remainder of those alleged to have been killed was the exact amount which the jury upon trial found for in favor of the plaintiff, so that to justify such verdict it was necessary for the jury to find that all seven of the remaining horses and colts were killed owing to the negligence of the company.

It is the theory of the plaintiff that the horses killed in October were struck by the train on the right of way of defendant just south of the south crossing, thus placing this killing just south of the south cattle guards. It is plaintiff's theory that the three horses, which he claims were killed in December, were killed upon the right of way just south of the cattle guards along the south side of the north crossing. Under the pleadings, evidence, and instructions in this case, it would be necessary for the jury to find that the horses entered the right of way in each

case over cattle guards that were defective, as there is no claim that the horses were killed by getting caught in defective guards, and, in fact, the more defective the guards were, the better would have been the chances for escape. In reviewing the testimony, we find ample testimony to show that the horses were injured by the defendant's trains, and that, as regards those injured in December, the evidence was ample to justify the finding that they were struck by the train while on the right of way of the defendant company, and further there was some evidence showing the cattle guards both at the north and south ends of this piece of right of way to be in bad condition. There was, however, a conflict in the evidence in regard to the October accident. The engineer on one of defendant's trains swore that it was his engine that struck these horses, and that he struck said horses when his train was going towards the south. Three of the horses killed in October were found in the public highway, one immediately to the south of the wing fence extending from the east side of the railroad track along the north side of the south crossing. Another lay near the center of the public highway about 75 feet east of where such highway crosses the railroad track. Another was somewhat south of this last one, being to the southeast of the east end of the wing fence running east from the railroad track along the south side of said south crossing; the other horse being found inside of the defendant's right of way on the west side of the track about 25 feet south of the wing fence on the south side of the south crossing. There was absolutely no evidence to indicate that this bunch of horses was struck by the train when such train was north of this south crossing, and, from the location of three of these horses, it will be readily seen that they could not have been struck within the right of way of defendant company south of this crossing, by a train going south. If struck by the train while going south, they must have been struck on the public crossing, and therefore there would be nothing to warrant the jury in finding against the defendant as to these three horses. There was evidence, however, which, if believed by the jury, would tend to show that the tracks of several horses were found within the right of way near and just

south of where lay the dead horses found within such right of way, and, furthermore, that such tracks lead down toward the cattle guard just north of where this dead animal lay, and that the wing fence to the east of such cattle guard was broken, all of which would tend to show such horses may have been struck, as claimed by the plaintiff, by a train when going north and while the horses were on said right of way; three of them being thrown by said train off said right of way.

This must have been found to be the fact to support the verdict. It will thus be seen, if the jury were justified in finding that the train going north struck and injured these animals, while they were on defendant's right of way, it became further essential that such jury find that the horses got upon this right of way over a defective cattle guard. There is absolutely no evidence to show what the condition was south of where it is claimed this accident occurred—to show whether or not the right of way was entirely open and unobstructed, or whether at some point farther south there were found other wing fences and cattle guards. It must certainly be admitted that if south of here there were proper fences and a proper cattle guard, and the horses got upon the right of way going from the south, the defendant company would not be liable, because it cannot be claimed that the company must provide a cattle guard which renders it absolutely impossible for stock to pass over it. Furthermore, under the issues in this case, it was necessary to negative the idea that these horses entered the right of way except over a defective guard, for the reason, as we have stated, that it is not claimed that the horses were killed in the cattle guard, and, if these horses came in from the south, there is absolutely nothing to show that any cattle guard had a thing to do with the killing. Therefore, there being no evidence whatever as to the condition south of the point of the accident to support the verdict, the jury must have found that the stock came in over the cattle guard on the south side of the south crossing, and that such cattle guard was defective.

There was no proof whatever that the horses entered the right of way over such cattle guard. Moreover, as to the con-

dition of such cattle guard, the plaintiff failed in his proof. Only two persons testified on behalf of plaintiff in relation to the condition of any of the cattle guards. One Wallin, called as a witness by plaintiff, and who, it appears, lived close by the railroad right of way and near the north crossing, testified that he had examined the cattle guards "along his place"; there being no further designation as to what guards he referred to. He further testified that such guards permitted stock to pass over the same, and that he had notified the superintendent of defendant company prior to the time plaintiff's horses were injured; but there is absolutely nothing in his testimony from which the jury would have a right to find that his evidence referred in any manner to the cattle guards at the south crossing. The other witness testifying in regard to the condition of cattle guards was plaintiff's son. He says: "I have observed the cattle guards marked on the map by dotted line, but gave them no special attention. I have noticed them at that time and other times. They are constructed of little slats of boards put together, and no pit in under them, and almost level with the ground, and I should judge 2½ or 3 or 4 inches apart. The top of the cattle guards were splintered off, and some gravel in under them, and the gravel in some places was almost level with the cattle guards." In order further to show the condition of the cattle guards, this witness testified that, after these accidents, a mare and colt of his got through the cattle guard at the north crossing, "where these three head were killed and went down on the right of way and crossed out where the other four were killed." It will readily be seen that the evidence was wholly insufficient to show that the cattle guards south of the south crossing were in a defective condition. While, on the other hand, defendant's witnesses testified that the same was in a proper condition and was of a standard make such as the company was using generally and similar to those in use by other companies.

Many things which certainly could have been covered by testimony upon the trial were overlooked, or the testimony was left in a very unsatisfactory manner. As an illustration, we would call attention to the fact that some of these horses were

not killed outright, and, while certain witnesses have made general statements to the effect that the horses were killed by the train, yet, in the case of one witness, it appears he knew nothing whatever in relation thereto except what he 'had been told, and another of such witnesses, upon further examination, states, in regard to at least two animals, that when he last saw them they were alive, the condition of one being described as being badly stiffened up and bruised, and witness thought that it had its jaw broken. Whether this animal died from its injuries, or whether it was killed by some person owing to its condition, or whether it is still alive, does not appear. We deem it unnecessary to consider other features of the case.

The judgment of the trial court and order denying a new trial are reversed.